# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES MICHAEL MURPHY**, | Case No. 3:14-cv-01135-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NITA GOSS**, in her individual capacity as Health Professionals Program Coordinator, Oregon Medical Board; **JOHN/JANE DOE**, in his or her individual capacity as an employee of the Oregon Medical Board; **W. KENT WILLIAMSON**, in his individual capacity as Board Chair of the Oregon Medical Board; and **KATHLEEN HALEY**, as the Executive Director of the Oregon Medical Board, | |
| Defendants. | |

Marianne Dugan, 259 E. 5th Ave., Suite 200-D, Eugene, OR 97401. Of Attorneys for Plaintiff.

Ellen F. Rosenblum, Attorney General and Todd Marshall, Senior Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 1162 Court Street N.E., Salem, OR 97301. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiff, James Michael Murphy ("Plaintiff"), brings this action against three members

of the Oregon Medical Board ("OMB"): Nita Goss, Kent Williamson, and Kathleen Haley, as

well as John/Jane Doe, an unidentified employee of the OMB (collectively "Defendants").

Before the Court is Defendants' Motion for Summary Judgment (Dkt. 27). For the reasons that

follow, Defendants' motion is granted and this case is dismissed.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view

the evidence in the light most favorable to the non-movant and draw all reasonable inferences in

the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th

Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of

the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Plaintiff is a board certified anesthesiologist. On June 21, 2008, Plaintiff signed an

employment agreement with Tuality Healthcare ("Tuality"), an Oregon non-profit community

healthcare organization, and became a member of the medical staff of the Tuality Community

Hospital as a sole practitioner providing anesthesia services. As part of his agreement with

Tuality, Plaintiff was required to abide by the medical staff bylaws, rules, and regulations set by

Tuality. On September 4, 2009, Plaintiff was on cardiac call, which required Plaintiff to be

available for telephone consultation with hospital staff, for scheduling surgeries, or to report to the hospital for acute surgical emergencies. While on cardiac call, Plaintiff went to a restaurant and consumed one or two glasses of wine. Plaintiff's consumption of wine while on cardiac call violated Tuality's medical staff policies.

On July 7, 2011, OMB issued a Complaint and Notice of Proposed Disciplinary Action to Plaintiff, proposing to take disciplinary action against him for his violation of Tuality's policies. OMB issued a Final Order on July 17, 2012 (the "Final Order"), finding that Plaintiff violated Or. Rev. Stat. ("ORS") § 677.190(1)(a) by engaging in unprofessional or dishonorable conduct as defined by ORS § 677.188(4)(a). That statutory provision defines unprofessional or dishonorable conduct to include any conduct or practice that does or might constitute a danger to the health or safety of a patient or the public. The Final Order states in relevant part:

> The evidence was established, by both a preponderance of evidence and by clear and convincing evidence, that Dr. Murphy consumed alcohol while on call in violation of Tuality's policy, and that this conduct violated recognized standards of ethics. The Board also finds that consuming alcohol while on cardiac call places the physician at risk of impaired function, and as such, constitutes conduct "which does or might adversely affect a physician's … ability to safely and skillfully to practice medicine…" ORS 677.190(4)(a). The Board concludes that Dr. Murphy engaged in unprofessional or dishonorable conduct and has grounds to sanction Dr. Murphy.
>
> Dr. Murphy is reprimanded for violating hospital policy, which has a direct bearing on patient safety, and his ethical duty to abstain from consuming alcohol while on cardiac call at Tuality Hospital. In doing so, Dr. Murphy subordinated the best interest of his patients to his own personal desires.

Plaintiff does not challenge the validity of the Final Order.

After issuing the Final Order, OMB reported the Final Order to the National Practitioner

Data Bank ("NPDB"), as required by the Health Care Quality Improvement Act of 1986[1]

("HCQIA"), a federal statute. Congress enacted HCQIA to prevent malpractice, improve the

quality of health care, and ensure that incompetent physicians could not move from state to state

without disclosing a physician's previous damaging or incompetent performance. HCQIA seeks

to promote these goals through professional peer review, which it accomplishes, in part, by

limiting the civil liability of the physicians, administrators, and healthcare entities involved in

professional review actions. HCQIA established the NPDB to collect and release certain

information about the professional competence and conduct of physicians, dentists, and other

healthcare practitioners. HCQIA and related regulations determine which professional review

actions and other events must be reported and which entities must report to the NPDB under

which circumstances. HCQIA also imposes penalties for failing to report required information to

the NPDB.

As part of the process of reporting the Final Order to the NPDB, the following question

was posed to OMB: "Is the Adverse Action Specified in This Report Based on the Subject's

Professional Competence or Conduct, Which Adversely Affected, or Could Have Adversely

Affected, the Health or Welfare of the Patient?" One or more of the Defendants responded "Yes"

to this question. Plaintiff alleges that this response was incorrect.

## DISCUSSION

Plaintiff brings his claims under 42 U.S.C. § 1983, seeking damages and declaratory and

injunctive relief for violation of his constitutional rights to substantive due process and equal

protection. Defendants argue that they are entitled to both federal statutory immunity under

---

[1] 42 U.S.C. §§ 11101-11152.

HCQIA and qualified immunity under § 1983. The Court addresses each of Defendants' arguments in turn.

## A.  HCQIA Immunity

Under HCQIA, any healthcare entity that takes final peer-review action that "adversely affects the clinical privileges of a physician for a period longer than 30 days" must report that final action to the state board of medical examiners. 42 U.S.C. § 11133(a)(1). The state board of medical examiners must then report this information to the National Practitioner Data Bank. *See* 45 C.F.R. § 60.11(b).

HCQIA provides for immunity from damages actions for hospitals, doctors, and others who participate in professional peer review proceedings or file reports with the NPDB. *Brown v. Presbyterian Healthcare Servs.*, 101 F.3d 1324, 1333 (10th Cir. 1996). HCQIA contains two separate immunity provisions: immunity for reports made to the NPDB pursuant to 42 U.S.C. § 11137 and professional review action immunity pursuant to 42 U.S.C. §§ 11111 and 11112. *See Hooda v. W.C.A. Serv. Corp.*, 2013 WL 2161821, at *5 (W.D.N.Y. May 17, 2013) (analyzing separate immunity provisions under HCQIA). Because Plaintiff's claims relate only to Defendants' allegedly false report to the NPDB, rather than the validity of the OMB's peer review action, only the immunity granted by Section 11137 applies to this case.

Section 11137(c) of HCQIA provides that no person or entity "shall be held liable in any civil action with respect to any report made under this subchapter . . . without knowledge of the falsity of the information contained in the report." "[I]mmunity for reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false." *Brown*, 101 F.3d at 1334; *Ritten v. Lapeer Regional Med. Cntr.*, 611 F. Supp. 2d 696, 733 (E.D. Mich. 2009). Moreover, Section 11137(c) immunity is complete: it provides immunity from both damages and suits for injunctive relief. *See Reyes v.*

*Wilson Mem'l Hosp.*, 102 F. Supp. 2d 798, 822 (S.D. Ohio 1998) (contrasting Section 11137(c)'s "complete" grant of immunity with Section 11111's more limited grant of immunity from damages).

In evaluating a report to the NPDB, courts do not evaluate whether the underlying merits of the reported action were properly determined. Instead, "the court's role is to evaluate whether the report itself accurately reflected the action taken." *Kunajukr v. Lawrence & Mem'l Hosp., Inc.*, 2009 WL 651984, at *23 (D. Conn. Jan. 12, 2009); *Cf. Brown*, 101 F.3d at 1334 (refusing to grant immunity in case where report to NPDB did not accurately reflect the findings of the professional review action, and there was sufficient evidence from which a reasonable jury could have concluded that the report was false and the defendant knew of its falsity).

Defendants' argue that they are entitled to immunity under Section 11137(c) because Nita Goss, the individual who claims to have filed the report with the NPDB, declares that she had no actual knowledge that the report was false, apparently conceding, at least for purposes of summary judgment, that the report to the NPDB was incorrect. Plaintiff responds that: (1) there is a genuine dispute of material of fact regarding the falsity of the NPDB report; (2) immunity under HCQIA cannot be established as a matter of law; and (3) even if there is no evidence in the record that any party had actual knowledge of the NPDB report's falsity, the Court should deny summary judgment and grant further discovery to allow Plaintiff to obtain such evidence.

Plaintiff's first argument, that there is a genuine dispute of material fact regarding the falsity of the NPDB report, is irrelevant, as Defendants appear to concede, for the purposes of summary judgment, that the report was inaccurate. Plaintiff's second argument, that immunity under HCQIA cannot be established as a matter of law, is a misstatement of the law governing HCQIA immunity under Section 11137(c). *See Brown*, 101 F.3d at 1334 ("[I]mmunity for

reporting exists as a matter of law unless there is sufficient evidence for a jury to conclude the report was false and the reporting party knew it was false."). Finally, Plaintiff's third argument is meritless, because Plaintiff not only concedes that there is no evidence that Defendants had any knowledge that the report was false, but also concedes that further discovery is unlikely to reveal evidence that any Defendant had actual knowledge that the report was false. As Plaintiff explains in his response: "[e]ven after discovery, presumably [the person who filed the NPDB report] will insist that they had no actual knowledge of falsity, and plaintiff will submit that there is sufficient evidence that the person did indeed have such actual knowledge – presenting a disputed issue of material fact on the immunity question." Plaintiff, however, does not point to any evidence in the record suggesting that any Defendant knew that the NPDB report was false. Standing alone, the mere assertion by Plaintiff that one of the Defendants had actual knowledge that the report was false is insufficient to survive a motion for summary judgment under these circumstances. Further, Plaintiff did not make the showing required under Rule 56(d) of the Federal Rules of Civil Procedure to justify allowing additional discovery and deferring ruling on Defendants' motion. Accordingly, there is no genuine dispute of material fact regarding Defendants' entitlement to immunity under Section 11137(c) of HCQIA.

## B.  Standards for Qualified Immunity Under Section 1983

Defendants also contend that they are entitled to qualified immunity under 42 U.S.C. § 1983. The Ninth Circuit recently restated familiar guidance for analyzing qualified immunity in the context of summary judgment:

> At the summary judgment stage, [courts] ask whether the facts, "[t]aken in the light most favorable to the party asserting the injury," show that the officers violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223 (2009). If the officers violated a constitutional right, [courts] determine . . . "whether federal rights asserted by a plaintiff were clearly

established at the time of the alleged violation." *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003).

*George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014). A court has discretion to decide which of these two prongs of the qualified-immunity test to tackle first. *Id.* Qualified immunity allows government officials to make reasonable but mistaken judgments about open legal questions and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011) (quotations and citation omitted). As discussed below, Plaintiff has failed to state a valid claim for violations of his statutory or constitutional rights. Defendants, therefore, are entitled to qualified immunity.

## C.  Substantive Due Process Claim

In his response brief, Plaintiff frames his substantive due process claim as a "stigma-plus claim" under the Fourteenth Amendment. The Fourteenth Amendment's protection against deprivation of liberty encompasses the right of persons to engage in any of the common occupations of life. *Hyland v. Wonder*, 972 F.2d 1129, 1141 (9th Cir. 1992). If, when terminating an employee, the government engages in conduct "that so severely stigmatize the employee that she cannot avail herself of other employment opportunities, a claim for deprivation of liberty will stand." *Id.* (citation omitted). The stigma required must be "severe and genuinely debilitating" such that it essentially forecloses the employee's freedom to take advantage of other employment opportunities. *Id.* The charges must amount to accusations of moral turpitude, such as immorality or dishonesty, to invoke constitutional protection. *Id.* at 1142. Accusations that an employee is incompetent, unable to get along with others, lacks judgment, or is untrustworthy fail to rise to a level that implicates a liberty interest. *See Harrington v. City of Portland*, 677 F. Supp. 1491,

1501 (D. Or. 1987). The accusations must also be substantially false. *See Siegert v. Gilley*, 500 U.S. 226, 234 (1991).

Here, even if Defendants were not entitled to immunity under HCQIA, Plaintiff has failed to state a viable substantive due process claim for several independent reasons. First, Plaintiff does not allege that he was terminated. Termination of the employee is a cornerstone of a constitutional claim for deprivation of the Fourteenth Amendment liberty interest of employment. *See, e.g., Hyland*, 972 F.2d at 1141 (the stigmatizing conduct must be "in the course of dismissing an employee"); *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988) ("In order to trigger the procedural protections of due process attendant to a properly presented liberty interest claim, a plaintiff must show that . . . the charge is made in connection with termination of employment.") (quotations and citation omitted). Because there was no termination of Plaintiff's employment, he fails to plead a constitutionally-protected employment deprivation.

Second, none of the Defendants was Plaintiff's employer and the allegedly false report to the NPDB was not made in connection with the termination of Plaintiff's employment. Thus, it does not implicate Plaintiff's liberty interest in employment.

Third, the conduct alleged is not sufficiently egregious to trigger a protected liberty interest. None of Plaintiff's allegations involve accusations or statements by Defendants of moral turpitude and none are so severe and genuinely debilitating that Plaintiff lost his freedom to take advantage of other employment opportunities. *See, e.g.*, *Hyland*, 972 F.2d at 1142 (public statements that peace officer improperly released confidential information to the public and revealing the circumstances of the peace officer's discharge insufficient to implicate a liberty interest); *Harrington*, 677 F. Supp. at 1493-94, 1501 (allegations by police chief that she was publicly discredited by the charges made against her in the process of a two-month public

investigation that was triggered by false accusations of certain Portland police officers, and her

subsequent removal as police chief, insufficient to raise a liberty interest because the public

charges related to her incompetence, the inability to get along with others, and lack of judgment

or trust). Therefore, even if Defendants were not entitled to immunity under HCQIA, the Court

would grant summary judgment on this claim based on qualified immunity.

## D.  Equal Protection Claim

Plaintiff also claims that by filing the NPDB report, Defendants violated Plaintiff's rights

under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause

guarantees, "No state shall . . . deny to any person within its jurisdiction the equal protection of

the laws." U.S. Const. amend. XIV, § 1. Plaintiff's equal protection claim is framed as a "class of

one claim," which alleges that Defendants intentionally treated him differently from other

similarly situated persons. The Supreme Court has recognized that "an equal protection claim

can in some circumstances be sustained even if the plaintiff has not alleged class-based

discrimination, but instead claims that she has been irrationally singled out as a so-called 'class

of one.'" *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Village of

Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).

To succeed on his "class of one" claim, Plaintiff must demonstrate that Defendants:

(1) intentionally (2) treated Plaintiff differently than other similarly situated persons, (3) without

a rational basis. *Willowbrook*, 528 U.S. at 564; *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013,

1021-22 (9th Cir. 2011); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir.

2008). Plaintiff's claim fails on the first requirement because, as explained above, not only does

Plaintiff concede that there is no actual evidence that Defendants intentionally filed an incorrect

report with the NPDB, but Plaintiff also admits that further discovery is unlikely to reveal any

evidence creating a genuine dispute of material fact that Defendants intentionally filed an

incorrect report. Therefore, even if Defendants were not entitled to immunity under HCQIA, the

Court would also grant summary judgment on this claim based on qualified immunity.

## CONCLUSION

Defendants' Motion for Summary Judgment (Dkt. 27) is GRANTED. This case is

DISMISSED.

**IT IS SO ORDERED**.

DATED this 16th day of April, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge